IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORAH FLAHERTY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CLINIQUE LABORATORIES LLC<br><br>    Defendant. | Case No. 21-3447<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED** |

Now comes the Plaintiff, NORAH FLAHERTY ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her Class Action Complaint against the Defendant, CLINIQUE LABORATORIES LLC., ("Defendant"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq.*, common law fraud, unjust enrichment, and breach of warranty, resulting from the illegal actions of Defendant, in intentionally labeling its skincare products with false and misleading claims that they are oil-free, when Defendant's products contain numerous oils. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs, and is a class action in which members of the class are citizens of a State different from the Defendant.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendant does business in the Northern District of Illinois.

## PARTIES

4. Plaintiff is a citizen of Illinois who was at all relevant times residing in Chicago, Illinois.

5. Defendant is a Delaware limited liability company, whose principal place of business is located in New York, New York. On information and belief, no members of Defendant are citizens of Illinois.

6. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of cosmetics and skincare products.

## FACTS COMMON TO ALL COUNTS

7. Defendant manufactures, advertises, markets, sells, and distributes skincare products throughout Illinois and the United States under the brand names Clinique.

8. During the Class Period Defendant sold at least the following products (the "Products") advertised as oil-free when they in fact contained oils including but not limited to those listed below:

> a. Beyond perfecting foundation + concealer: dimethicone; isostearyl neopentanoate; tocopherol acetate;

    b. Dramatically different moisturizing gel: dimethicone, isododecane, tocopherol acetate;

    c. Stay-Matte Sheer Pressed Powder: dimethicone; octyldodecyl stearoyl stearate;

    d. Stay-Matte Oil-Free make up: dimethicone; tocopherol acetate;

    e. Super City Block: tocopherol acetate;

    f. City Block oil-free daily face protector: dimethicone, tocopherol acetate,

    g. Superdefense City Block: dimethicone, tocopherol, isononyl isononanoate, neopentyl glycol diheptanoate.

9. All of the Products listed in paragraph 8 above are substantially similar because all of the Products are skincare products, all of the Products perform similar functions many of which overlap between products, all of the Products contain the same oil-free labeling, all purchasers are damaged in the same way, and all of the Products oil-free labeling is false for the same reason, namely that the Products contain oils.

10. On March 18, 2021, Plaintiff purchased one of each of Defendant's dramatically different moisturizing gel products, stay-matte sheer pressed powder products, and beyond perfecting foundation + concealer products at Sephora Southport located at 3405 N. Southport, Chicago, Illinois.

11. When purchasing Defendant's products Plaintiff made her purchasing decision because of the labeling on the products which read "oil-free".

12. At the time of Plaintiff's purchases she did not purchase similar products which did not contain oil-free labeling and generally avoids purchasing cosmetics and skincare products

3

which do not contain oil-free labeling, because the presence of oils in her cosmetic and skincare products is a material concern to Plaintiff.

13. Plaintiff would not have purchased Defendant's products and would have instead purchased accurately labeled oil-free products from Defendant's competitors, if she had known Defendant's products contained oils.

14. However, if Defendant removed all oils from its oil-free products, Plaintiff would purchase the products again.

15. Plaintiff is drawn to oil-free labeling for multiple reasons, including but not limited to the following: Plaintiff does not like the way oil feels on her skin, Plaintiff is concerned that oils in her cosmetics and skincare products will cause her to develop blackheads and other forms of acne, Plaintiff does not like the "shiny" appearance of her face when she uses oil base cosmetics and skincare products, Plaintiff does not like the residue often left by oils, Plaintiff does not like when oil based cosmetics and skincare products become slick when interacting with perspiration, and Plaintiff uses oil-free labeling to help determine which products she should use in conjunction with other products so as to minimize any feeling of oiliness, or other unpleasant feelings associated with using multiple cosmetic and skincare products at the same time.

16. All of Plaintiff's reasons for being drawn oil-free labeling are based on the same common fact that oil-free products do not contain oils.

17. When Plaintiff purchases oil-free products she interprets the statement "oil-free" to mean the products she is purchasing are free of oils and will not contain any ingredients that have all of the following qualities: liquid at room temperature, more viscous but less dense than water, do not mix with water, and slick or slippery to the touch.

18. In other words, Plaintiff, like any reasonable consumer, understands oils to be substances that look, feel, and interact with water the way common oils, such as olive oil, vitamin e oil, or castor oil, do, and Plaintiff expected that when she bought oil-free products they would not contain any substances that can be characterized as oils based on the way they look, feel, and interact with water.

19. On multiple occasions using either of the Products she most recently purchased Plaintiff has experienced dissatisfaction with the Products due to the Products feelings oily, causing breakouts, leaving an unpleasant residue on her skin, causing eye irritation when mixed with sweat, and interacting with other skincare products she used at the same time in a way that made her skin feel oily.

20. Purchasers of the Products on Defendant's website have left reviews that mirror Plaintiff's negative experiences with the Products. One purchaser of the Beyond perfecting foundation + concealer stated as follows: "this is the second Clinique product I've tried in a month that broke me out. I normally do not get breakouts and nothing else in my routine has changed. Took this product along with the Stay Matte Powder to my dermatologist and both products contain isostearyl neopentanoate, which on a scale of 1-5 rates as a 3 for acne in sensitive skin. I thought Clinique used sensitive skin friendly ingredients?" A purchaser of the Dramatically different moisturizing gel stated as follows: "I am from a very tropical area and this cream does not feel good on my skin. My face after applying it looks like sweat and sticky. I do not recommend it for oily skin and not if you live in a tropical place." A purchaser of the Stay-Matte Sheer Pressed Powder stated as follows: "This was one of the worst oil control powders I have ever used. It didn't do anything and it was so sheer that is was almost transparent. Don't buy this stuff!" A purchaser of the Stay-Matte Oil-Free make up stated as follows: "I decided to try it this out since Clinique is

5

supposed to be good for sensitive skin. Wore this two days in a row and started breaking out. Stay away if you have sensitive skin." [1]

21. Clearly, the presence of oils in the Products failed to live up to the expectations that reasonable consumers have when purchasing products labeled as oil-free, namely that those products do not contain oils.

22. All of the Products contain oils, but Defendant intentionally advertise and label the Products as oil-free.

23. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the qualities of the products.

24. By making false and misleading claims about the qualities of the products, Defendant impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

25. Therefore, Plaintiff has been deprived of her legally protected interest to obtain true and accurate information about her consumer products as required by law.

26. As a result, Plaintiff has been misled into purchasing products that did not provide her with the benefit of the bargain she paid money for, namely that Defendant's oil-free products would actually be oil-free.

---

[1] Reviews found at: https://www.clinique.com/product/1599/34817/Makeup/Foundations/Beyond-Perfecting-Foundation-Concealer?gclid=Cj0KCQjw8IaGBhCHARIsAGIRRYp2X6-7dIcUzNVV_X6UqC1u_UGn51xfXgaWVEVr0Xx4gzFhhufsGeoaAp7rEALw_wcB&gclsrc=aw.ds&shade=WN_96_Chai, https://www.clinique.com/product/1574/5047/3-step/step-3-moisturize/dramatically-differenttm-moisturizing-gel, https://www.clinique.com/product/1607/6069/makeup/powders/stay-matte-sheer-pressed-powder?gclsrcaw.ds=&gclsrc=aw.ds&gclid=Cj0KCQjw8IaGBhCHARIsAGIRRYrbl_RLbhM-wBa9dDgmX_eLPUzN3MIvfNSncLgAC3iVie0aYSpaSX4aAhMtEALw_wcB&gclsrc=aw.ds&shade=01_Stay_Buff, https://www.clinique.com/product/1599/21954/makeup/foundations/stay-matte-oil-free-makeup?gclid=Cj0KCQjw8IaGBhCHARIsAGIRRYpl-MpHoApj9Smm1wo5xOWY9sRXQG-FISAzQCmpHOppI4toJpxzTogaAtkREALw_wcB&gclsrc=aw.ds&shade=CN_08_Linen,

27. Oil is a term that describes a material that is both hydrophobic and lipophilic. Oil can also be classified by the polarity of the material. Oils can be wholly non-polar such as hydrocarbons, or polar such as fatty acids. Oil comprises the following chemical functional groups:[2]

    a. hydrocarbons (alkanes, alkenes) —such as squalane commonly sold as squalane oil;
    b. triglycerides—such as glycerol tristearate also known as stearin;
    c. esters—such as ester oil;
    d. fatty acids—such as palmitic acid;
    e. certain silicones—such as alkyl dimethicone
    f. fatty alcohols-sterols

28. All of the above functional groups can be generally characterized by the same physical properties commonly observed in oils by laypersons including being less dense than water, being more viscous than water, not mixing with water, and feeling slick or slippery to the touch.

29. All of the following ingredients have been named in this First Amended Complaint precisely because they look like oils, feel like oils, interact with water like oils, and match the above chemical definition of oil; and therefore are substances that a reasonable consumer would not expect to be in products labeled as oil-free.

30. The following is a structural diagram of dimethicone:

---

[2] Tony O'Lenick, Polar vs. Nonpolar oils, 2008.
    https://www.cosmeticsandtoiletries.com/research/chemistry/17390254.html



-silicone(siloxane)

31. Dimethicone is defined as a polysiloxane. As shown in the diagram in paragraph 30 above, dimethicone contains the silicone (siloxane) functional group. It would be defined as a polar oil. The compound has a density of 0.965 g/mL, compared to water's 1g/mL.

32. The following is a structural diagram of tocopherol acetate:

-alkane

-ester

33. Tocopherol acetate is defined as an ester and is more commonly called vitamin E acetate. As shown in the diagram in paragraph 32 above, tocopherol acetate contains the alkane and ester functional groups. It would be defined as a polar oil. The compound has a density of 0.96 g/mL, compared to water's 1g/mL.

34. The following is a structural diagram of isododecane:

8



-alkane

35.     Isododecane is defined as a hydrocarbon. As shown in the diagram in paragraph 34 above, isododecane contains the alkane functional group. It would be defined as a non-polar oil. The compound has a density of 0.750 g/mL, compared to water's 1g/mL.

36.     The following is a structural diagram of isostearyl neopentanoate:



-alkane

-ester

37.     Isostearyl neopentanoate is defined as an ester. As shown in the diagram in paragraph 36 above, Isostearyl neopentanoate contains the ester and alkane functional group. It would be defined as a polar oil. The compound has a density of 0. 0.86 g/mL, compared to water's 1g/mL

38.     The following is a structural diagram of octyldodecyl stearoyl stearate:



-alkane

-ester

39. Octododecyl is defined as an ester. As shown in the diagram in paragraph 38 above, Octododecyl contains the ester and alkane functional group. It would be defined as a polar oil. The compound has a predicted density of 0.9 g/mL, compared to water's 1g/mL.

40. The following is a structural diagram of isononyl isononanoate:

-alkane

-ester

41. Isononyl isononanoate is defined as an ester. As shown in the diagram in paragraph 40 above, isononyl isononanoate contains the ester and alkane functional group. It would be defined as a polar oil. The compound has a density of 0.85 g/mL, compared to water's 1g/mL.

42. The following is a structural diagram of neopentyl glycol diheptanoate:

43. Neopentyl glycol diheptanoate is defined as an ester. As shown in the diagram in paragraph 40 above, neopentyl glycol diheptanoate contains the ester and alkane functional group. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL

44. Plaintiff would not have been able to understand that the Products contained oils without an advanced understanding of chemistry.

45. Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as oil-free, Plaintiff could not have known that the Products contained oils.

46. Plaintiff was unaware that the Products contained oils when she purchased them.

47. Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as oil free.

48. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

49. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "Oil-Free" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained oils unless Defendant expressly told them.

50. Defendant employs professional chemists to create the chemical formulas of Defendant's products. Therefore, Defendant through its employees knew or should have known that the Products contained oils and that by labeling the Products as oil-free they were deceiving consumers.

51. Many of the ingredients listed above are commonly referred to as oils or oily liquids in the chemical industry, cosmetics/skincare industry, and consumer-oriented media regarding those substances.[3]

---

[3] William M. Haynes, CRC Handbook of chemistry and Physics, p. 654 (2015); Michael Bockisch, Fats and Oils Handbook, p. 113 (1998); sigmaaldrich.com, Silicone Oil, https://www.sigmaaldrich.com/catalog/product/sial/85409?lang=en&region=US&cm_sp=Insite-_-caSrpResults_srpRecs_srpModel_silicone%20oil-_-srpRecs3-1; The Washington Post, Contaminant found in vaping products linked to deadly lung illness, (2019),

52. Therefore, Defendant would have to be virtually cut-off from the entire chemical industry, cosmetics/skincare industry, and consumer-oriented media not to know that many of the ingredients in its oil-free products are widely referred to as and considered to be oils.

53. On information and belief, Defendant through their employees did know that the Products contained oils but chose to include "oil-free" labeling because they did not believe their customers were well educated enough to know the difference.

54. On information and belief, Defendant is not virtually cut-off from the entire chemical industry, cosmetics/skincare industry, and consumer-oriented media, and was fully aware that labeling the Products as oil-free would be deceptive to reasonable consumers.

55. As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a. Lost money;

    b. Wasting Plaintiff's time; and

    c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

56. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the Complaint through the date of class certification.

---

https://www.washingtonpost.com/health/2019/09/05/contaminant-found-vaping-products-linked-deadly-lung-illnesses-state-federal-labs-show/; cosmeticsandtoiletries.com, Two Decades of Transfer-resistant Lipstick, (2015), https://www.cosmeticsandtoiletries.com/research/chemistry/Two-Decades-of-Transfer-resistant-Lipstick-290207561.html

57. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within the State of Illinois who purchased the Products within ten years prior to the filing of the Complaint through the date of class certification.

58. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

59. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant and its retailers.

60. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

61. There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual Class and Sub-Class members and include, but are not necessarily limited to, the following:

    a.    Whether Defendant disseminated false and misleading information by claiming the Products was oil-free when they contained oils;

    b.    Whether the Class and Sub-Class members were informed that the products contained oils;

    c.    Whether the Products contained oils;

    d.    Whether Defendant's conduct was unfair and deceptive;

    e.    Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

    f.    Whether there should be a tolling of the statute of limitations; and

    g.    Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

62. As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

63. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

64. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

65. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the

delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many Class and Sub-Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

66. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class and Sub-Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class and Sub-Class members to protect their interests.

67. Plaintiff's claims and injuries are identical to the claims and injuries of all Class and Sub-Class members, because all claims and injuries of all Class and Sub-Class members are based on the same false labeling and same legal theories. All allegations arise from the identical, false, affirmative written statements made by Defendant when it claimed the Products are oil-free.

68. Defendant has acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

69. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

70. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

71. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

72. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

73. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

74. Through its representation that the Products were oil-free, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

75. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

76. In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above,

Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

77. Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

78. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT II
## COMMON LAW FRAUD

79. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

80. Through its false statements on the Products' packaging, that the Products were oil-free, Defendant made false statements of material fact.

81. At the time Defendant made its statements to Plaintiff that the Products were oil-free, it knew, or reasonably should have known, that the statements described above were false.

82. At the time Defendant made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

83. Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products did in fact contain oils.

84. As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited

to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## COUNT III
## UNJUST ENRICHMENT

85. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

86. Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

87. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products are oil-free.

88. Defendant's retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, and the Class and Sub-Class members, as they were not provided the benefit of the bargain they paid Defendant money for, namely that the Products would be oil-free.

89. Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

    a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

    b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendant in the future;

f. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECTFULLY SUBMITTED,

NORAH FLAHERTY

By: /s/ Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Phone: (877) 619-8966
Fax: (866) 633-0228
tfriedman@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Phone: (224) 218-0875
Fax: (866) 633-0228
steven.perry@toddflaw.com

/s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com