## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| NORAH FLAHERTY, individually and on behalf of all others similarly situated, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | No. 1:21-cv-03447 Hon. Marvin E. Aspen |
| CLINIQUE LABORATORIES LLC | ) ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION & ORDER

MARVIN E. ASPEN, District Judge:

This putative class action concerns the alleged false and deceptive advertising of skincare products. Defendant Clinique Laboratories LLC ("Clinique") has moved to dismiss Plaintiff Norah Flaherty's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Defendant Clinique Laboratories LLC's Motion to Dismiss the Claims of Norah Flaherty or, in the Alternative, to Strike Plaintiff's Class Allegations ("Motion") (Dkt. No. 11).)[1] Clinique has also moved to strike the Complaint's class allegations under Federal Rule of Civil Procedure 23(c)(1)(A). *Id.* For the reasons set forth below, we grant the motion to dismiss in part and deny the motion to strike.

## BACKGROUND

The following facts are taken from Flaherty's Complaint and are deemed to be true for the purposes of this motion. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

[1] For ECF filings, we cite the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Flaherty, a citizen of Illinois, resides in Chicago, Illinois. (Class Action Complaint ("Compl.") (Dkt. No. 1) ¶ 4.) Clinique is a Delaware limited liability company, with its principal place of business in New York, New York. (*Id*. ¶ 5.) Clinique "manufactures, advertises, markets, sells, and distributes skincare products throughout Illinois and the United States" under the Clinique brand name. (*Id*. ¶ 7.)

On March 18, 2021, Flaherty purchased three Clinique-brand products at a Sephora located in Chicago. (*Id*. ¶ 10.) Specifically, Flaherty bought Dramatically Different Moisturizing Gel, Stay-Matte Sheer Pressed Powder, and Beyond Perfecting™ Foundation + Concealer. (*Id*.) Flaherty claims that Clinique markets these and four other products—Stay-Matte Oil-Free Make Up, Super City Block, City Block Oil-Free Daily Face Protector, and Superdefense City Block—as oil-free, although they all contain oils. (*Id*. ¶ 8.) These seven products (the "Products") all contain one or more of the following ingredients: dimethicone, isostearyl neopentanoate, tocopherol acetate, isododecane, octyldodecyl stearoyl stearate, tocopherol, isononyl isononanoate, and neopentyl glycol diheptanoate. (*Id*. ¶ 8.) According to Flaherty, the Products are all "substantially similar" to one another because they are all "skincare products," all "perform similar functions," all "contain the same oil-free labeling," all people who purchased one of these products were "damaged in the same way," and all the Products' "oil-free labeling is false for the same reason, namely that the Products contain oils." (*Id*. ¶ 9.)

Flaherty alleges that she was persuaded to buy the Dramatically Different Moisturizing Gel, Stay-Matte Sheer Pressed Powder, and Beyond Perfecting™ Foundation + Concealer because they are all marketed as "oil-free." (*Id*. ¶¶ 10–11.) If she had known that they contain oils, she would not have purchased them. (*Id*. ¶ 13.) Flaherty does not like to use skincare products containing oils for several reasons; for example, she does not like the way oils feel on

her skin, she is concerned that oils will cause her to develop acne, and she does not like the

"shiny" appearance of her face when she uses oil-based skincare products. (*Id*. ¶ 15.) According

to Flaherty, after she used the three Clinique products she purchased, she experienced breakouts,

"unpleasant residue on her skin," eye irritation, and oily-feeling skin. (*Id*. ¶ 19.) As a result, she

lost money, wasted time, and experienced "[s]tress, aggravation, frustration, loss of trust, loss of

serenity, and loss of confidence in product labeling." (*Id*. ¶ 55.)

     Flaherty claims that Clinique has intentionally mislabeled the Products as "oil-free" when

they contain "numerous oils." (*Id*. ¶ 1.) Flaherty brings this putative class action on behalf of

herself and "[a]ll persons within the United States who purchased the Products within four years

prior to the filing of the Complaint through the date of class certification." (*Id*. ¶ 56.) She also

brings the action on behalf of a sub-class consisting of "[a]ll persons within the State of Illinois

who purchased the Products within ten years prior to the filing of the Complaint through the date

of class certification." (*Id*. ¶ 57.) Flaherty seeks "damages, injunctive relief, and any other

available legal or equitable remedies" for Clinique's alleged violation of the Illinois Consumer

Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*,

common law fraud, and unjust enrichment.[2] (*Id*. ¶ 1.)

## ANALYSIS

### I.    Motion to Dismiss

     A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not the merits of a

case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v.*

---

[2] Flaherty also states that she seeks damages for breach of warranty. (Compl. ¶ 1.) However, her
Complaint does not contain a count for breach of warranty or make clear which, if any, of the
allegations relate to an alleged breach of warranty. Accordingly, we assume that this reference
to "breach of warranty" was a scrivener's error.

*City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In evaluating a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor."  *Tamayo*, 526 F.3d at 1081.  Courts may grant motions to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (internal quotation marks and citations omitted).

Clinique argues that Flaherty's Complaint should be dismissed in its entirety because she cannot plausibly allege the causation or reliance elements of her claims.  (Defendant Clinique Laboratories LLC's Memorandum of Law in Support of Its Motion to Dismiss the Claims of Norah Flaherty or, in the Alternative, to Strike Plaintiff's Class Allegations ("Mem.") (Dkt. No. 12) at 5–8.)  In the alternative, Clinique contends that we should dismiss Flaherty's claims for the four products that she did not purchase because she does not have standing to pursue these claims.  (*Id*. at 8–10.)  We will consider each of Clinique's arguments in turn.

### A.    Causation / Reliance

The crux of Flaherty's claims is that she bought Clinique's products because they said that they were oil-free, but then she later found out that they were not.  (Compl. ¶¶ 11, 13, 19.)  As a result, she did not receive her money's worth and experienced undesirable results, such as breakouts.  (*Id.* ¶¶ 19, 26.)

Clinique argues that we must dismiss Flaherty's ICFA, unjust enrichment, and common-law fraud claims fail because she cannot plausibly allege the causation or reliance requirements of those causes of action.  (Mem. at 5–8.)  Under ICFA, "a plaintiff must allege that [s]he was, in some manner, deceived."  *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155, 776 N.E.2d 151, 164 (Ill. 2002).  To plead a claim for unjust enrichment under Illinois law, a plaintiff must allege a causal link between the defendant's alleged injury and the plaintiff's injury.  *See Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 460 (N.D. Ill. 2013).  And to state a claim for common-law fraud in Illinois, a plaintiff must allege that she relied on the defendant's fraud.  *See Slep-Tone Entertainment Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 906 (N.D. Ill. 2014).

According to Clinique, Flaherty cannot plead facts that meet any of these standards because she knew about the purported deception before she purchased Clinique's products.  (Mem. at 5–8.)  By the time Flaherty bought Clinique's products, she had filed several lawsuits against other manufacturers, similarly alleging that certain of their "oil-free" products contain ingredients that she believes to be "oils."  (*Id.* at 7.)  She then purchased Clinique products with at least some of the same ingredients as those at issue in the other suits.  (*Id.*)  In Clinique's view, Flaherty could not have seen the "oil-free" representation on its products without also seeing that the products contain ingredients that she believes to be oils.  (*Id.* at 8; Dkt. No. 12-2.)  Flaherty counters that Clinique's arguments are inappropriate at this stage of litigation.  (Plaintiff's

5

Response to Defendant's Motion to Dismiss and/or Strike Allegations from Plaintiff's Complaint ("Opp'n") (Dkt. No. 18) at 8–10.)  According to Flaherty, Clinique's argument implicitly assumes that she "has an advanced understanding of chemistry," which contradicts the allegations in her Complaint.  (*Id.* at 9.)

"Courts ordinarily may not consider extrinsic evidence without converting a motion to dismiss into one for summary judgment." *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894 (N.D. Ill. 2020) (citing *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018)).  However, courts may "take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017).  The contents of a plaintiff's prior complaint may be subject to this exception in certain circumstances.  *See, e.g.*, *Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017) (concluding that it was proper for the district court to take notice of a complaint filed in state court, which contained "the same essential allegations as the present suit"); *Rao v. Gondi*, 14 C 66, 2014 WL 5423441, at *3 n.1 (N.D. Ill. Oct. 23, 2014) (taking judicial notice of the content of a parallel lawsuit in which the plaintiff had alleged that a university was liable for the same conduct as a university employee named as a defendant in the instant case).

Assuming that it would be appropriate for us to take judicial notice of Flaherty's prior complaints here, Clinique's argument would still fail.  Nowhere in Flaherty's Complaint does she allege that, prior to purchase, she examined the ingredients on each of the packages of the Clinique products that she purchased, much less that she drew a connection between those ingredients and the ingredients at issue in her prior suits.  (*See generally* Compl.)  And contrary to Clinique's assertion, it is not inconceivable that Flaherty saw the "oil-free" representation

without reviewing the ingredient list.  For example, photos of the product packaging supplied by Clinique reflect that on each of the products that Flaherty purchased, the "oil-free" representation appears on a different side of the box than the ingredient list.  (*See* Dkt. No. 12-2 at 3–7.)  Consequently, it is possible that Flaherty saw the "oil-free" language without seeing the ingredient list.  Because we agree with Flaherty that Clinique's argument concerning causation and reliance is not appropriate at the motion to dismiss stage, we decline to dismiss Flaherty's claims on this basis.

### B. Standing to Bring Individual and Class Claims for Products Flaherty Did Not Purchase

Flaherty's claims relate to seven products—only three of which she purchased.  (Compl. ¶¶ 8, 10, 56, 57.)  Clinique contends that Flaherty does not have standing, either on behalf of herself or a putative class, to pursue claims for the four products that she did not purchase.  (Mem. at 8–10.)  Flaherty responds that there is a split in this District as to whether a plaintiff in a class action has standing to pursue claims for products that she did not purchase.  (Opp'n at 10.)  She urges us to follow the line of cases holding that a plaintiff has standing to pursue claims for unpurchased products that are substantially similar to purchased products.  (*Id*. at 11–13.)  She contends that this approach "aligns with a majority of court decisions, and serves the purposes of class actions generally."  (*Id*. at 12.)  She then puts forth several reasons why the Products are, in her view, substantially similar.  (*Id*. at 12–13.)  In reply, Clinique disputes that the Products satisfy the substantially similar standard.  (Defendant Clinique Laboratories LLC's Reply Memorandum in Support of Motion to Dismiss the Claims of Norah Flaherty or, in the Alternative, to Strike Plaintiff's Class Allegations ("Reply") (Dkt. No. 19) at 7–8.)

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 338. In the class action context:

> [A] named plaintiff cannot acquire standing to sue by bringing [her] action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (internal quotation marks and citations omitted).

Several courts have concluded that a named plaintiff cannot maintain claims either for herself or on behalf of a class for products that she did not purchase. *See, e.g., Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *3 (N.D. Ill. Sept. 28, 2021) (dismissing claims related to decaffeinated coffee where plaintiffs had purchased other coffee products); *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016) ("Plaintiffs cannot establish an injury-in-fact caused by products plaintiffs did not purchase and so there is no case or controversy with respect to these products."); *Pearson v. Target Corp.*, No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012) (concluding that plaintiff lacked both ICFA and Article III standing to bring claims related to products that he had not purchased). But other courts have concluded that a named "plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Suchanek v. Sturm Foods, Inc.*, Case No. 11-CV-565-NJR-RJD, 2019 WL 1978342, at *2–3 (S.D. Ill. May 3, 2019) (internal

quotation marks and citation omitted); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (internal quotation marks and citation omitted).

Even if we were to adopt the latter approach, Flaherty would still not have standing to pursue claims for the four products that she did not purchase because she has not alleged facts suggesting that they are substantially similar to the three products that she purchased. According to Flaherty, the Products are substantially similar because they are "skincare products," they "perform similar functions many of which overlap between products," they all "contain oil-free labeling," all individuals who purchased the products "are damaged in the same way," and all the "oil-free" labeling on the Products is false because the Products contain oils. (Opp'n at 12–13.) However, at least two of the alleged similarities—that the Products are all "skincare products" and "perform similar functions"—are highly generic and could equally apply to other products produced by Clinique and other cosmetics manufacturers. *See Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *6 (N.D. Ill. Feb. 28, 2018) (products were not substantially similar where some of the alleged similarities "could equally apply to not just other candies made by Fannie May, but to products made by almost any other chocolate or confection maker"). For this reason, Flaherty's argument does not persuade us that the products are "substantially similar."

Further, as shown in the table below, although the Products allegedly bear the same "oil-free" label, they do not contain the same combination of offending ingredients. (*See* Compl. ¶ 8.) Nor do the three products that Flaherty purchased contain all the alleged oils at issue. (*Id*.) For example, Flaherty does not allege that any of the products that she purchased contain the tocopherol, isononyl isononanoate, or neopentyl glycol diheptanoate found in the Superdefense City Block that she did not buy. (*Id*.)

9

| | Products Flaherty Purchased | | | Products Flaherty Did Not Purchase | | | |
|---|---|---|---|---|---|---|---|
| | Beyond Perfecting™ Foundation + Concealer | Dramatically Different Moisturizing Gel | Stay-Matte Sheer Pressed Powder | Stay-Matte Oil-free Make Up | Super City Block | City Block Oil-free Daily Face Protector | Superdefense City Block |
| Dimethicone | X | X | X | X | | X | X |
| Isostearyl Neopentanoate | X | | | | | | |
| Tocopherol Acetate | X | X | | X | X | X | |
| Isododecane | | X | | | | | |
| Octyldodecyl Stearoyl | | | X | | | | |
| Tocopherol | | | | | | | X |
| Isononyl Isononanoate | | | | | | | X |
| Neopentyl Glycol Diheptanoate | | | | | | | X |

Because the purchased products have different formulations than the unpurchased products, this case is analogous to cases where courts have concluded that named plaintiffs did not have standing to bring claims for dietary supplements that they did not purchase. *See, e.g.*, *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *4 (N.D. Ill. Sept. 22, 2016) (plaintiff did not have standing to bring claims for unpurchased St. John's Wort products where he had not alleged that formulations were identical or that misrepresentations were "the product of a single decision or policy"); *Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 WL 6460086, at *3–4 (N.D. Ill. Oct. 26, 2015) (plaintiffs did not have standing to bring claims for unpurchased bodybuilding and sports nutrition supplements where formulations and labels were not substantially similar); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012) (plaintiff could not maintain ICFA claim for an unpurchased dietary supplement where the dietary supplements at issue had "different product formulations and labels"). In those cases, as here, the product formulations are sufficiently different such that the

10

parties' arguments will likely differ as to each product.  *See Gubala*, 2015 WL 6460086, at *3

("Their labels . . . reflect the different formulations and ingredients.  It necessarily follows that

Plaintiffs' arguments as to what makes each product's label misleading are different.").

Consistent with those opinions, we conclude that Flaherty has not shown that the Products are

substantially similar to one another.  Purchasers of the Clinique products that Flaherty did not

purchase may opt to join this case.  *See Muir*, 2016 WL 5234596, at *4.  However, based on the

current allegations in the Complaint, Flaherty may only pursue claims for the products that she

purchased.  *Id.*

## II.      Motion to Strike Class Allegations

Flaherty purports to bring her claims on behalf of two classes: (1) "[a]ll persons within

the United States who purchased the Products within four years prior to the filing of the

Complaint through the date of class certification" and (2) "[a]ll persons within the State of

Illinois who purchased the Products within ten years prior to the filing of the Complaint through

the date of class certification."  (Compl. ¶¶ 56, 57.)

Clinique contends that we should strike the class claims in their entirety, or in the

alternative, the nationwide class allegations.  (Mem. at 10–16.)  According to Clinique, all class

allegations should be stricken because Flaherty cannot satisfy Rule 23, and the nationwide class

should be stricken because a nationwide class would be unmanageable, given the variation in

state laws governing the claims at issue.  (*Id.*)  Flaherty responds that it is too early to decide

these issues.  (Opp'n at 13–15.)

"At an early practicable time after a person sues or is sued as a class representative, the

court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P.

23(c)(1)(A).  "Most often it will not be 'practicable' for the court to do that at the pleading

stage[.]"  *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013).  However,

11

"[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982). "When a plaintiff's class allegations are facially and inherently deficient . . . a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, Case No. 17-CV-986, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (internal quotation marks and citations omitted). But if "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (quoting *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)).

## A.    Adequacy and Typicality

"Pursuant to Rule 23(a), a class may be certified 'only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 489360, at *2 (N.D. Ill. Feb. 20, 2008) (quoting Fed. R. Civ. P. 23(a)). Clinique argues that Flaherty is not an adequate representative of the class and that her claims are not typical of class members due to her litigation history. (Mem. at 13.) According to Clinique, "Flaherty's *own prior complaints* make clear that she knew Clinique's products contained ingredients she has deemed to be oils but purchased them anyway." (*Id.*) Clinique insists that its defense against Flaherty would "usurp a

12

significant portion" of Flaherty's "time and energy," potentially disadvantaging the rest of the class.  (*Id*. (internal citations and quotation marks omitted).)

As discussed above, it is not clear that Flaherty "knew Clinique's products contained ingredients she has deemed to be oils" before she purchased them.  Additional factual development is needed to determine, among other things, whether Flaherty knew that the Clinique products she purchased contained the offending oils when she purchased them.  Because it would be inappropriate to determine whether Flaherty can satisfy the adequacy and typicality requirements of Rule 23 without further factual development, we deny Clinique's motion to strike the class allegations on that basis.  *See Keith v. Ferring Pharms., Inc.*, Case No. 15 C 10381, 2016 WL 5391224, at *12–13 (N.D. Ill. Sept. 27, 2016) (rejecting arguments in support of motion to strike class allegations that were "factual in nature" and therefore, inappropriate at the pleading stage); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) (declining to strike class allegations at the pleading stage because the Court was "not equipped with the information needed to conduct the rigorous analysis required to determine whether Rule 23's requirements [had] been satisfied").

### B.    Nationwide Class

Clinique also argues that a nationwide class is impracticable because each class member's claims would be governed by the laws of the state where he or she saw and purchased Clinique's products.  (Mem. at 13–16.)  Clinique maintains that state laws concerning consumer fraud, common-law fraud, and unjust enrichment vary in significant ways.  (*Id*. at 15–16.)  For example, Clinique claims that state consumer fraud laws differ in terms of "the type of prohibited conduct, proof of injury-in-fact, available remedies, scienter, statute of limitations, and reliance." (*Id*. at 15 (quoting *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008)).)  Likewise,

according to Clinique, the elements of common law fraud "'vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose.'" (*Id*. (quoting *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002)).) And finally, regarding unjust enrichment, Clinique identifies differences in state unjust enrichment laws that have led courts to conclude that the laws of unjust enrichment "'are not appropriate for class action treatment.'" (*Id*. at 15–16 (quoting *Muehlbauer v. Gen. Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009)).)

Courts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable. *See, e.g., Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 409–12 (N.D. Ill. 2021) (Gottschall, J.) (concluding that it was premature to strike class allegations where movant offered a superficial choice of law analysis and issues raised would benefit from discovery); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 757–58 (N.D. Ill. 2018) (Feinerman, J.) (declining to strike class allegations at the pleading stage); *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (Norgle, J.) (denying defendant's motion to strike nationwide class claims as premature); *Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) (St. Eve, J.) (concluding that it would be "sensible to wait to conduct the relevant [class certification] analysis until the issues are fully briefed and the record is fully developed"); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *11 (N.D. Ill. Mar. 15, 2016) (Ellis, J.) (finding that the "proposed inquiry into the impact of state law variations [was] premature"); *but see Miles v. Am. Honda Motor Co., Inc.*, Case No. 17 C 4423, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) (Gettleman, J.) (striking nationwide class at

14

the motion to dismiss stage where it would be unmanageable to adjudicate claims "under the laws of so many jurisdictions"); *Cowen v. Lenny & Larry's, Inc.*, No. 17 CV 1530, 2017 WL 4572201, at *3–5 (N.D. Ill. Oct. 12, 2017) (Gettleman, J.) (same). Courts have struck such allegations, however, where the moving party explains in detail why the variation in state law would make a nationwide class impracticable. *See, e.g.*, *Cowen*, 2017 WL 4572201, at *3–5 (striking nationwide class claims where "defendant used five pages of its motion . . . to demonstrate 'specific impediments' to class certification in the way of conflicting state laws").

It may be that a nationwide class is impracticable here; however, the prudent approach is to wait for a more fully developed record before deciding that issue. Assuming that Clinique is correct in its choice-of-law analysis and the laws of up to fifty different states and the District of Columbia must be applied to the class claims, Clinique has not explained why the high-level differences that it identified "are material enough to defeat certification at the pleading stage." *See Tex. Hill Country*, 522 F. Supp. 3d at 411. We need additional fact development to determine whether the alleged differences in state laws create an actual conflict for Flaherty and the class members. *Id*. at 411–12.

After further factual development, we may also discover that the putative class of "thousands" does not include individuals in every state, thereby rendering some of the distinctions identified by Clinique inapposite. (Compl. ¶ 58; *see also Tex. Hill Country*, 522 F. Supp. 3d at 411 (declining to strike nationwide class allegations where a class of "thousands" might not include individuals from every state).) "Because a choice of law analysis is premature, [we] cannot rule out the possibility that there will be no material conflicts of laws or that, if there are, state-specific subclasses may be a manageable alternative in the event that certifying a

national class proves unworkable." *Tex. Hill Country*, 522 F. Supp. 3d at 411. Accordingly, Clinique's motion to strike Flaherty's class allegations is denied.

## III.    Leave to Amend

Finally, Flaherty requests leave to amend her Complaint should we grant Clinique's motion. (Opp'n at 15–16.) Clinique counters that amendment would be futile. (Reply at 10–11.)

"As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). We cannot say that the defects in Flaherty's Complaint are incurable. *See Hill*, 946 F. Supp. 2d at 833–34 (giving plaintiffs the opportunity to replead claims, including those related to class allegations). Accordingly, Flaherty may amend her claims by December 6, 2021.

## CONCLUSION

For the above reasons, we grant Clinique's motion to dismiss in part and deny its motion to strike. (Dkt. No. 11.) Flaherty's claims are dismissed to the extent that she seeks relief for products that she did not purchase. Flaherty has until December 6, 2021, to amend her Complaint if she can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. It is so ordered.



_____
Honorable Marvin E. Aspen
United States District Judge


Dated: November 15, 2021
        Chicago, Illinois

16